## WADSWORTH v. JEWELERS' & TRADESMEN'S CO.

### (*Superior Court of New York City, General Term.*   May 5, 1890.)

LIFE INSURANCE—MUTUAL BENEFIT—CERTIFICATE.

A certificate of membership in a mutual life insurance association declared that within 60 days after proof of the death, etc., the amount therein mentioned should be payable from the death fund at the time of the death, or from any moneys that should be realized to the fund from the next assessment made after the death, and "no claim should be otherwise due or payable, except from the reserve fund, as hereinafter provided." It also provided that, if the death fund was insufficient to meet existing claims by death, an assessment should be made on every member whose certificate was in force at the date of the death last assessed for, and the net amount received from such assessment, (less 20 per cent. for the reserve fund,) as provided in the constitution and by-laws, should go into the death fund. The constitution provided that, whenever the mortuary fund was insufficient to meet a death claim in full, there should be paid in full satisfaction of such claim a sum *pro rata* of the membership and benefits in force at the time of the death. The company required each person proposing to become a member to pay a certain sum, which was called, "First death assessment." The assured was the first member to die, and the death fund at his death was insufficient to pay the claim, and assessments were made to meet it. *Held*, the claim was not satisfied by paying the amount of the death fund on hand at the time of the death, and that the proceeds of the assessments made to meet it should be appropriated to the full satisfaction thereof.

Appeal from trial term.

Action by Myra L. Wadsworth against the Jewelers' & Tradesmen's Company of New York, to recover $4,000 upon a certificate of insurance for that amount, issued by defendant upon the life of Elbert E. Wadsworth, and payable to plaintiff.   Defendant claims that plaintiff was entitled to $1,438.68 only, because the mortuary fund of defendant at the time of the death was in-

sufficient to pay the full amount of the certificate. The action was tried by the court without a jury, and judgment entered in plaintiff's favor for $3,547.42. Defendant appeals.

Argued before SEDGWICK, C. J., and FREEDMAN and O'GORMAN, JJ.

*James Hunt*, for appellant.   *S. F. Kneeland*, for respondent.

SEDGWICK, C. J.   The defendant was a mutual company, constituted to make insurances upon the lives of such persons as should become members. They issued a certificate of membership to the husband of the plaintiff, which declared that, within 60 days after the receipt of satisfactory evidence of the death, etc., "there shall be payable to Myra L. Wadsworth $4,000 from the death fund of the company, at the time of said death, or from any moneys that shall be realized to the said fund from the next assessment, to be made as hereinafter set forth, and no claim shall be otherwise due or payable, except from the reserve fund, as hereinafter provided." I see no reason to doubt that a claim was entitled to be satisfied out of the death fund existing at the time of death, and, if that death fund did not satisfy the claim, the part not satisfied was to be paid as far as possible out of the fund to be made by the collections from assessments after the death.   The certificate provided, if the death fund is insufficient to meet existing claims by death, an assessment shall then be made upon every member whose certificate is in force at the date of the death last assessed for, and the net amount received from such assessment, (less 20 per cent. to be set apart for the reserve fund,) as provided in the constitution and by-laws of said company, shall go into the death fund.   Section 2, art. 5, of the constitution, and which regulated assessments, was, whenever the mortuary fund is insufficient to meet a death claim or claims, the board of directors shall cause to be made upon the members, etc., an assessment for such a sum as may be by the executive committee deemed sufficient to pay such claim or claims, the same to be appropriated among the members according to the age of each member, and at the rates specified in the certificate of membership, etc.   It seems to be plain that any valid claim was to be satisfied, not from a single fund, but from the death fund on hand at the time of the death; and, if that were insufficient, then from the amounts of collections of assessment made to increase the first fund.   The result would be that there would be a single fund called the "death fund."   As there was no provision for the company creating a death fund, except by assessments to be made to meet death claims, the consequence would be that there would be no death fund until after the first death, and the first claim would have no death fund on hand to resort to.   Evidently this would be an injustice to the first death claim, which should have a right to resort to a death fund on hand, as the other members would have.   So, without authority from the by-laws or constitution, but by the assent of persons as they became members, the company required each person proposing to become a member to pay a certain sum, under what they called a first death assessment.   In this instance the member paid what is called, in a receipt given to him, "First death assessment, $6."   If it be considered that such an assessment was not of a kind to be made under the articles of the constitution, certificate of membership, or the by-laws, and the testimony leaving to inference what was the origin and purpose of the so called "first death assessment," it must be inferred that the assessment was made to create a fund or death fund that should be in existence at the time of the first death, and the obligation of the company would be to treat the collections so to be made as constituting the death fund at the time of the first death.   It was the right of the first claimant, by the terms of policy, to have that death fund, if not sufficient to pay the claim, increased by an assessment to be made.   A provision of the certificate that has already been cited is that the collections of the assessment shall go into the death fund.

In this case the claim was the first death claim. At the time of the death there was on hand collections from the assessments made before the death. This was the death fund. The company made assessments afterwards to meet the claim. The assessments were specifically made, as appears by the notice, to meet the claim of the plaintiff, because it declares that, proof of the death of the following named members having been this day received and found satisfactory, a mortuary call is made; and then the name given was Elbert E. Wadsworth, who took the certificate of membership in this case. I am of opinion that the learned judge below was right in holding that the claim was not satisfied by paying the amount of the death fund on hand at the time of the death, and that the funds that came from the assessments made to meet that claim should be appropriated to the full satisfaction of the claim. An argument was made that the plaintiff was entitled to receive less than the plaintiff's claim, upon the provisions of section 3, art. 5, of the constitution. That section was that, in case a death claim is proven which a single assessment is insufficient to pay, the said claim there shall be paid, in full satisfaction of such claim, a sum *pro rata* of the membership and benefit in force at the time of the death of such membership. These expressions have, to my mind, no meaning, and are at the best vague and indefinite, and not applicable to facts shown by testimony. The terms of the contract, if there be inconsistency, should control. The judgment is affirmed, with costs. All concur.